# Commonwealth *v.* Brown, Appellant.

*Criminal law—Conspiracy—Definition—Testimony of accomplice.*

1. The crime of conspiracy is a combination between two or more persons to do an unlawful act. After the conspiracy is formed, it makes no difference which one of the conspirators performs the unlawful act; all who conspire are guilty of conspiracy.

2. A conviction of conspiracy may be had upon the testimony of an accomplice without corroboration, but the jury should be advised that it is unsafe to convict on such testimony. A conviction will not be set aside if the court in commenting upon the testimony of a conspirator tells the jury that it should "scrutinize such testimony carefully, and it ought to be corroborated by other witnesses, or by circumstances."

*Practice, C. P.—Trial—Improper remarks of counsel.*

3. Where on a trial, objection is made to the remarks of counsel, and a dispute arises as to what was actually said, and the trial court is asked to decide between the conflicting statements, the version adopted by that court will not be disturbed in the appellate court unless clear mistake is shown.

*Practice, C. P.—Trial—Charge—Points and answers.*

4. Points and answers as to the law governing a case on trial are part of the charge, and must be so considered upon complaint of its inadequacy. When they are so considered and deemed complete, the complaint of inadequacy of the instructions as to the law is groundless.

Argued May 12, 1914. Appeal, No. 57, Oct. T., 1914, by defendant, from judgment of Q. S. Phila. Co., Aug. Sessions, 1913, No. 296, on verdict of guilty in case of Commonwealth v. Solomon Brown. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Indictment for conspiracy. Before MARTIN, P. J.

The court charged as follows:
[The case you have been trying for the last two days is a charge of conspiracy. This is a different crime from those heretofore presented for your consideration. Conspiracy is a combination between two or more persons to do an unlawful act. After the conspiracy is formed, it makes no difference which one of the conspirators performs the unlawful act, all who conspire are guilty of the conspiracy.] [1]

The commonwealth alleges that Brown, the defendant, and Ginsburg, who has not yet been tried, conspired to remove the stock of shoes from the place of business occupied by Ginsburg at 4332 Germantown avenue, in order to prevent his creditors from collecting debts that he owed them. The defendant is presumed to be innocent until proved guilty beyond a reasonable doubt.

Is the evidence sufficient to overcome the burden that rests upon the commonwealth? Ginsburg testified that he had two places of business, one on Germantown avenue and the other on Girard avenue, that there was about $18,000 worth of stock in the Germantown avenue store; that he was a little short of money to pay the season's bills and asked Brown for a loan of $1,000; that

Brown told him he would be foolish to borrow money, he could fail and make a bunch of money. He testified that he met Brown at 238 Morris street, afterwards in the Girard avenue store, and on another occasion Brown telephoned to meet him at 200 Morris street, where they talked over the arrangement until two o'clock in the morning. Ginsburg further testified that Brown suggested he should remove the stock beyond the reach of creditors, hide it away and secrete himself, and then Brown would come back to Philadelphia and settle with the creditors for ten, fifteen or twenty-five cents on the dollar; that Brown suggested the best way to get rid of the goods was to ship them to New York to a consignee named Johnson, but who would be Brown, to Brown himself, and Kramer and Company, who were in the lamp business at 18 Delancey street, New York, and then Brown would come to Philadelphia and see what had developed, secure the fixtures in the store and the empty cartons that held the shoes, and they could get the stuff back and start again in business. Ginsburg prepared a statement and they figured out he was behind about $1,000. He testified that they proceeded to pack the shoes on Sunday and shipped them Monday; that Brown helped to pack Sunday and complained that the men did not work quick enough, pulled off his coat and helped them out. The two drivers and a colored helper testified that Brown was present and helped pack.

It has been argued that the two drivers might be accused of conspiracy, because of their participation. That would be true if there was evidence to connect the drivers with the arrangement to defraud creditors. They went there in the course of their business, it appears, to haul the goods, and there is no evidence connecting them with the combination between Ginsburg and Brown.

The charge against Brown is not the act of taking the goods out, packing or disposing of them. Evidence of the packing and shipping was produced by the com-

monwealth to corroborate Ginsburg, who also testified to Brown's participation in packing. The bankruptcy court records were offered to show that Ginsburg was bankrupt; and owed more debts than he had assets. The creditors who were on the stand testified that he bought goods from them that had not been paid for. It has been argued that all this evidence serves to corroborate the testimony of Ginsburg, and that the combination was made between Brown and him to defraud creditors. To prove the conspiracy, the commonwealth produced the record of Ginsburg. According to his admissions, he has not a savory record. In addition to his testimony, there is the evidence of the drivers as to Brown helping to pack the goods on Sunday, and that he encouraged them by giving them whisky. Kramer testified that Brown was in New York and made an arrangement with him for a space to store the goods, and the driver in New York testified that Brown handed him the bills of lading which Ginsburg said Brown obtained from him. Ginsburg testified that Brown telephoned to the station in New York to ascertain if the goods arrived, and that Brown gave the driver the bills of lading to get the goods. Kramer said that he complained to Brown about so much room being taken up by the goods, and that Brown got casks from him in which to pack the contents of some of the broken boxes; and that Brown was there when some of the goods were shipped away.

Is there any reasonable explanation for Brown's connection with this affair, except that which Ginsburg assigns, namely, that he was a conspirator, and conspired with him to bring about this result? If you are satisfied beyond a reasonable doubt that Brown did conspire with Ginsburg's creditors, he is guilty. If you are not satisfied beyond a reasonable doubt that he did conspire, he should be acquitted.

Defendant presented this point:

3. Before the jury will be warranted in finding a

verdict of guilty, they must be satisfied beyond a reasonable doubt, if they believe the defendant entered into a conspiracy at all, that by removing the goods he intended to cheat or defraud a creditor.

That I affirm. If there is any other reason for removing the goods besides that which Ginsburg assigned, you may find that was not the intention; and unless there was an intent to cheat Ginsburg's creditors, the conspiracy has not been proved. [3]

Mr. Scott: I ask your Honor to charge the jury that the testimony of Ginsburg, being the testimony of a confessed criminal, must be scrutinized with more care than that of an ordinary witness.

The Court: Ginsburg confessed that he was a party to the conspiracy and that he is as bad as he alleged Brown to be. The commonwealth charges that they are both equally guilty. Where a party to a crime testified to the commission of the crime, the jury should consider the fact and the motive that prompts his testimony, and scrutinize such testimony carefully, and it ought to be corroborated by other witnesses or by circumstances. Ginsburg was the only witness as to the combination or conspiracy between Brown and himself. You may accept his testimony as true, if you are satisfied that it is worthy of belief, or reject it if you regard it as unreliable. The commonwealth has attempted to prove by other testimony Brown's participation in the subsequent acts, and it has been argued that there is no explanation for Brown having participated in the conduct of the affair unless he was a party to the original combination.

Mr. Scott: I ask for a general exception to your Honor's charge.

Exception for defendant. [2]

Mr. Scott: I desire to except to that portion of the district attorney's remark, wherein he stated that it is apparent Ginsburg and Brown are tarred with the same stick, and it is hard to say which is the most tarred, and

to that portion of his remark where he states that there has been no testimony offered to dispute the testimony of Ginsburg that they entered into a conspiracy, and asked for the withdrawal of a juror.

Mr. Fox: I stated that it is the contention of the commonwealth that there has been no evidence offered to dispute Ginsburg's testimony that they did enter into a conspiracy.

Motion overruled.

Exception for defendant.

Mr. Fox: A portion of the district attorney's remarks having been committed to the record in the case, the district attorney now desires to place on the record a statement in support of the contest in which those remarks were delivered and with your Honor's permission, I will dictate the following on the record:

The district attorney referred in his speech to the jury to all of the evidence offered by the commonwealth in support of its cases; referred to the effort of the defense in cross-examination to refute that testimony, and in particular, to the effort of the defense to show that the witness Ginsburg's testimony was colored by his own personal interest in the present case. In this connection counsel for the defendant brought out from the witness Ginsburg new evidence not offered by the examination in chief; namely, that he, Ginsburg, had already been in bankruptcy, that he, Ginsburg, had had a fire; that he, Ginsburg, was already a law student for two years, that he, Ginsburg, had been trading under his wife's name; that he, Ginsburg, has already disposed of part of his merchandise. Referring to this evidence, brought out by the defendant on cross-examination, the commonwealth agreed that this evidence, although damaging to the character of Ginsburg, did not refute his testimony to a conspiracy between himself and the defendant. In this connection the district attorney said:

It is the contention of the commonwealth that there has been no evidence offered (i. e., on cross-examination)

to dispute Ginsburg's testimony that they did enter into a conspiracy.

Mr. Scott: As counsel for the defense, I desire to state on the record that my remembrance of the statement made by the district attorney was as I dictated it previously upon the record, and I ask the court to verify either the interpretation of counsel for defense or the interpretation of the district attorney.

The Court: As I recall it the district attorney in his statement is correct. [6]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were instructions as above, quoting them.

*Henry J. Scott*, with him *Joseph A. Richman*, for appellant.—A conviction may be sustained on the testimony of an accomplice: Cox v. Com., 125 Pa. 94; Com. v. Simon, 44 Pa. Superior Ct. 81.

It has been the law of this state for many years that where counsel, and especially the district attorney, in addressing the jury, indulges in remarks which are not warranted by the evidence, and which are designed to prejudice the jury or improperly inflame them, the court should, upon motion, withdraw a juror, or, failing to do so, after a verdict, should grant a new trial: Com. v. Swartz, 37 Pa. Superior Ct. 507; Com. v. Martin, 47 Pa. Superior Ct. 346; Com. v. Shoemaker, 240 Pa. 255.

*Charles Edwin Fox*, assistant district attorney, with him *Samuel P. Rotan*, district attorney, for appellee.— It is well settled that there can be a conviction upon the testimony of an accomplice without corroboration: Kilrow v. Com., 89 Pa. 480; Com. v. Craig, 19 Pa. Superior Ct. 81; Com. v. DeMasi, 234 Pa. 570; Com. v. Lenhart, 40 Pa. Superior Ct. 572; Com. v. Klein, 42 Pa. Superior Ct. 66; Com. v. Wasson, 42 Pa. Superior

Ct. 38; Com. v. Simon, 44 Pa. Superior Ct. 538; Trickett on Pa. Crim. Law, Vol. 2, page 1047.

The remarks as to the district attorney were correct: Com. v. Swartz, 37 Pa. Superior Ct. 507; Com. v. Hickman, 231 Pa. 305; Com. v. Furman, Lancaster Law Rev. 227; Com. v. Elder, 34 Legal Int. 400; Com. v. Moyer, 52 Pa. Superior Ct. 548; Com. v. Bell, 20 Pa. C. C. Rep. 223; Com. v. Foley, 24 Pa. Superior Ct. 414.

OPINION BY KEPHART, J., July 15, 1914:

There is no complaint that there was not sufficient evidence to warrant the jury in returning a verdict of guilty. The defendant was charged with the crime of conspiracy. The principal witness for the commonwealth, Ginsburg, was one of the conspirators. He was the owner of two retail shoe establishments in Philadelphia, the stock in which was valued at $18,000. Being in need of money to pay the season's bills, he asked Brown, the defendant, for a loan of $1,000. Brown replied that he was "foolish to borrow money," that he "could fail and make a bunch of money." At the last meeting between Ginsburg and Brown, the following arrangements were made: Ginsburg was to pack the stock of shoes in cases, leaving the empty boxes in the stores; the cases were to be taken to Norristown and shipped from there to New York beyond the reach of creditors; Ginsburg was to secrete himself while Brown returned to Philadelphia to make settlement with Ginsburg's creditors, for ten, fifteen and twenty-five cents on the dollar; the goods were to be shipped to New York, consigned to Kramer & Company, Brown, and a fictitious consignee Johnson, a name used by Brown. In pursuance of this plan the goods were packed, Brown assisting in the packing, and shipped under the names of fictitious consignors to the parties in New York above named. The bills of lading were turned over by Ginsburg to Brown, and in New York

Brown gave them to a driver with instructions to move the goods from the freight station to the building of Kramer & Company. This was done. Brown paid the drayage, and having the goods in his possession he promptly dismissed Ginsburg, telling him to "get out." Brown secured, at his own expense, barrels in which to repack the shoes and he shipped them from Kramer & Company to Buffalo and other points. The goods were subsequently retaken by Ginsburg's receiver in bankruptcy. Ginsburg was hopelessly insolvent, and from a statement submitted to Brown he knew of his condition.

The assignments of error complain of the charge of the court: in not properly defining a conspiracy; in improperly instructing the jury as to a reasonable doubt; in failing to caution the jury about convicting on the uncorroborated testimony of an accomplice. Certain remarks of the district attorney are also assigned as error.

It is the duty of the trial court to properly instruct the jury as to the nature and character of the crime on trial so that there may be no doubt in the minds of the jurors as to a proper application of the facts they may find: Com. v. Duffy, 49 Pa. Superior Ct. 344. Conspiracy, though applying to many different combinations of wrongdoing, rises no higher than any other crime in so far as a definition as to its nature and character is concerned. The charge defines the crime as a "combination between two or more persons to do an unlawful act." This is a technical definition of conspiracy. Through the charge we find the following statements: "After the conspiracy is formed, it makes no difference which one of the conspirators performs the unlawful act, all who conspire are guilty of the conspiracy." "The commonwealth alleges that Brown, the defendant, and Ginsburg . . . . conspired to remove the stock of shoes from the place of business occupied by Ginsburg at 4332 Germantown Avenue, in order to prevent his creditors from collecting debts

that he owed them.   It has been argued that all this
evidence serves to corroborate the testimony of Gins-
burg, and that the combination was made between
Brown and him to defraud the creditors."   The court
then reviews the facts as we have stated them in the
opening of this opinion, and held that if the jury found
them to be true they would constitute the crime of
conspiracy.   This in itself was substantially a complete
definition of the crime, but if anything was lacking in
the court's charge (we do not so hold), the affirmance
of the defendant's sixth point covers any omission to
properly define the crime.   The sixth point and the
answer thereto is as follows:

"The gist of the offense charged in this case is the
unlawful agreement between the defendant and some
other person, and unless the jury are satisfied beyond a
reasonable doubt that the commonwealth has proved
beyond a reasonable doubt that the defendant did enter
into an unlawful agreement with some other person,
their verdict should be 'not guilty,' even though they
believe the goods were removed and even though some
one was defrauded.

"This I affirm.   You must be satisfied beyond a reason-
able doubt that Brown entered into an agreement with
Ginsburg, and that it was an unlawful agreement to
remove Ginsburg's property beyond the reach of his
creditors."

Points and answers as to the law governing a case
on trial are part of the charge and must be so considered
upon complaint of its inadequacy.   When they are so
considered and deemed complete the complaint of in-
adequacy of the instructions as to the law is groundless:
Com. v. Payne, 242 Pa. 394.

When a reasonable doubt, within the meaning of the
law and under the evidence, exists it is the property of
the defendant, and must result in an acquittal: Com.
v. Rider, 29 Pa. Superior Ct. 621.   As to the objection
relative to the instruction upon the matter of "reason-

able doubt," this is met by the affirmance of the defendant's second and third points and the answers to these points further instructing the jury as to a reasonable doubt. These instructions, with other references throughout the general charge, are strictly within the line of decisions on that subject and sufficient: Com. v. Conroy, 207 Pa. 212.

"The testimony of an accomplice should be corroborated and if not, the jury should be advised that it is unsafe to convict on such uncorroborated testimony, yet it is well settled that there can be a conviction upon the testimony of an accomplice without corroboration:" Com. v. Klein, 42 Pa. Superior Ct. 66; Com. v. Simon, 44 Pa. Superior Ct. 538. The learned court speaks of Ginsburg, the co-conspirator, as follows: "Ginsburg, according to his own admissions, has not a savory record," and in reply to a request of counsel to specifically charge on this testimony the court says: "Ginsburg confessed that he was a party to the conspiracy, and that he is as bad as he alleges Brown to be. The commonwealth charges that they are both equally guilty. Where a party to a crime testifies as to the commission of the crime, the jury should consider the fact and the motive that prompts his testimony, and scrutinize such testimony carefully, and it ought to be corroborated by other witnesses or by circumstances. Ginsburg was the only witness as to the combination or conspiracy between Brown and himself. You may accept his testimony as true, if you are satisfied it is worthy of belief, or reject it if you regard it as unreliable." While it does not say that it is "unsafe to convict," the inference from the instructions is clear. The testimony of Ginsburg was corroborated by the men who assisted in packing the shoes; the agents of the railroad company who issued the bills of lading; the drayman in New York who received the bills of lading and delivered the goods to Kramer & Company's building; the testimony of Kramer who owned the

building in which the goods were placed; and the testimony of the drayman who took the goods away. This testimony connects Brown, the defendant, with each of the acts done in pursuance of the agreement. There was no actual corroboration of the agreement itself, but the acts in pursuance of that agreement were sufficient from which the jury could infer that the agreement was in existence. The charge of the court, with the evidence of corroboration at hand, was full and complete and the defendant can complain of no harm from it.

The assistant district attorney performed the duties of the district attorney and was a quasi judicial officer representing the commonwealth. He should be careful to keep within his duties as such officer in his summing up to the jury or in the trial of a case. He should not press upon the jury any deductions not strictly legitimate, or make statements of harmful facts not testified to by himself or a witness: Com. v. Shoemaker, 240 Pa. 255, and cases therein cited; Com. v. Martin, 47 Pa. Superior Ct. 346. In the heat of an argument, where a cause is spiritedly contested, counsel's memory of what is said to the jury often leans toward their interest in the case; and when a dispute arises as to what was actually said, and the trial court is asked to decide between the conflicting statements, the version adopted by that court will not be disturbed here unless clear mistake is shown. The trial court, having accepted the assistant district attorney's view of the matter, we find no error in these remarks. The district attorney's reference, in his closing to the jury, to the fact that no testimony had been offered to dispute the testimony of Ginsburg that they, Brown and Ginsburg, entered into a conspiracy, when read in connection with this statement of the assistant district attorney, and the light in which he used the remark, dispels any idea that it had reference to the defendant's failure to take the witness stand in his own defense.

The seventh assignment of error complains that the court in its answer to the third point caused the burden of proof to shift. Throughout the entire charge the learned court made it clear that the burden was upon the commonwealth to establish beyond a reasonable doubt that the defendant entered into a conspiracy with Ginsburg to defraud the creditors of Ginsburg. It is evident that an attempt was made to cheat Ginsburg's creditors.

The assignments of error are overruled, the judgment is affirmed and the record remitted to the court below that the sentence may be carried into effect.