## Commonwealth *v.* Viscosky et al., Appellants.

*Criminal law — Malicious injury to railroads — Act of May 9, 1913, P. L. 186—Evidence—Accomplice—Expectations of leniency —Cross-examination.*

In the trial of an indictment for maliciously destroying railroad property, where an accomplice, called as a witness for the Commonwealth, has been fully cross-examined as to any promise, reward or inducement offered him for so testifying, it is not error to refuse to permit him to be asked whether he expected any leniency or treatment different from the defendants because of the testimony he was giving, until facts had been produced, under such cross-examination, upon which such expectations might be based.

Very wide latitude is permitted in the cross-examination of an accomplice and the most searching questioning is allowed in order to test his veracity, to show his feeling or animus against the de-

fendants, disclose his interest and discover whether any promise, reward, immunity or leniency has been held out or indicated to him in return for his evidence. But after all this has been done, without eliciting any personal hostility to the accused or discovering any promise or reward or leniency to the witness, the latter may not be asked as to his undisclosed expectations, resting upon no just or substantial ground.

An accomplice is a competent witness and may testify to material facts in issue, but the jury must judge of the credibility and weight of his testimony, and it is the duty of the court to counsel the jury to approach and consider the testimony of an accomplice with great caution, as the testimony comes from a source rendered impure and corrupt.

*Trials—Cross-examination of witnesses—Right to cross-examine own witness.*

In the absence of a clear abuse of discretion, the action of the trial court in refusing to allow defendant to cross-examine his own witness will not be reviewed, especially where it does not appear that the witness had made any statement to the defendants' counsel contrary to his testimony on the stand, or that he had ever been examined before on behalf of the party calling him.

Argued March 10, 1924. Appeals, Nos. 141, 142, 143, 144 and 145, April T., 1924, by defendants, from judgment of Q. S. Somerset Co., Sept. Sessions, 1923, No. 118, on verdict of guilty, in the case of Commonwealth of Pennsylvania v. Mike Viscosky, Annuncio Pacifico, Clementi Acitelli, Mike Kulchek, John Laputka, Alfred Ramsell, William Gregory. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Indictment for malicious injury to railroads under Act of May 9, 1913, P. L. 186, and for malicious mischief under the Act of March 31, 1860, P. L. 382. Before BERKEY, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty on which judgment of sentence was passed. Defendants appealed.

98　COMMONWEALTH *v.* VISCOSKY, Appellant.

*Errors assigned* were, among others, various rulings on evidence, the charge of the court and refusal to grant a new trial.

*Charles J. Margiotti,* and with him *Peter P. Jurchak, Ross R. Scott* and *P. K. Shaner,* for appellants.—A wide latitude in the cross-examination of an accomplice and the most searching question is permitted to test his veracity: Com. v. Emmett and Middlecamp, 74 Pa. Superior Ct. 86; Lee v. State, 21 Ohio, 151; Wharton's Criminal Evidence, 9 Ed. Par. 444; Kilrow v. Com., 89 Pa. Superior Ct. 480; Com. v. Simon, 44 Pa. Superior Ct. 538; Com. v. Farrell, 187 Pa. 423.

*Clarence L. Shaver,* and with him *W. Curtis Truxal, P. G. Cober, Uhl & Ealy, Charles F. Uhl, Charles H. Ealy* and *J. G. Ogle,* for appellee, cited: Com. v. De-Masi, 234 Pa. 572; Com. v. McCloskey, 273 Pa. 456; Com. v. Lord, 81 Pa. Superior Ct. 279; Com. v. Washington, 202 Pa. 148; Com. v. Webb, 252 Pa. 187; Com. v. Russogulo, 263 Pa. 93; Com. v. Varano, 258 Pa. 442; Com. v. Thomas, 275 Pa. 137; McMeen v. Com. 114 Pa. 300; Com. v. Zappe, 153 Pa. 498; Com. v. Boschino, 176 Pa. 103; Com. v. Morrison, 193 Pa. 613; Com. v. D'Angelo, 29 Pa. Superior Ct. 378.

OPINION BY KELLER, J., April 21, 1924:

Appellants were jointly charged with having maliciously destroyed a railroad bridge belonging to the Baltimore & Ohio Railroad Company. The indictment contained two counts; the first charging a felony under the Act of May 9, 1913, P. L. 186; the second a misdemeanor under the Act of March 31, 1860, P. L. 382, pl. 147. They were convicted on both counts, but sentenced on only the first. Sentence on the second count was suspended, and the assignment as to that count need not be considered: Com. v. Mellon, 81 Pa. Superior Ct. 20, 22.

The bridge was blown up by the use of an explosive on July 17, 1923, while a coal strike was in progress. It formed part of the railroad company's spur to a non-union mine which was being operated during the strike. The accused were all union strikers. The only direct evidence of their participation in the crime was furnished by John Goodisky, also a striker, an accomplice, whose testimony implicated all of the appellants, but placed the more active direction of the outrage on Viscosky, Kulchek and Ramsell, the last-named the secretary of the local union. Most of the numerous assignments of error filed relate to the examination of this witness and the charge of the court concerning his testimony.

The trial judge allowed the defense the widest latitude in the cross-examination of this witness as respects any promise, inducement or reward offered him in connection with his evidence. He was fully interrogated as to the circumstances under which he made his statement to the officials who arrested him, where it was made, who were present, who paid his expenses to Pittsburgh and return, and while there, whether any money was paid him by anybody or any promise made directly or indirectly if he would tell the story of the dynamiting; who furnished his bond for him, where he had been living since, who paid his hotel bills and expenses while attending court, with whom he had discussed the story, and whether anything was said indicating that he would be treated leniently if he told such a story—in short, he was most searchingly examined. After having elicited all the facts from which a jury might infer the state of the witness's mind and determine whether he was telling the truth in denying that any money, reward, promise, immunity or leniency had been offered him for testifying in the case, counsel for the defendants asked him whether he expected any leniency or to be treated any different than the defendants because of the testimony he was giving. This was objected to by the Commonwealth and

was excluded by the court "until facts have been produced under this cross-examination upon which expectations might be based."

It is unquestionably the law in this State that a very wide latitude is permitted in the cross-examination of an accomplice and the most searching questioning is allowed in order to test his veracity, show his feeling or animus against the defendants, disclose his interest, and discover whether any promise, reward, immunity or leniency has been held out, offered or indicated to him in return for his evidence: Kilrow v. Com., 89 Pa. 480, 485; Com. v. Emmett, 74 Pa. Superior Ct. 86, 89. But after all this has been done, without eliciting any personal hostility to the accused or discovering any promise of reward or leniency to the witness, we have no decision by our Supreme Court which holds that, in circumstances like the present, the witness may be asked as to his undisclosed expectations, resting upon no just or substantial ground of hope. It is true that Prof. Wigmore in his work on Evidence, (2d ed., vol. 2, section 967, p. 351) says: "It bears against a witness' credibility that he is an accomplice in the crime charged and testifies for the prosecution; and the pendency of any indictment against the witness indicates indirectly a similar possibility of his currying favor by testifying for the State; so, too, the existence of a promise or just expectation of pardon for his share as accomplice in the crime charged." But in all the cases cited by the learned author, and relied upon by appellants, (Stevens v. People, 215 Ill. 593, 74 N. E. 786; Territory v. Chavez, 8 N. M. 528, 45 Pac. 1107; State v. Nelson, 59 Kan. 776, 52 Pac. 868; State v. Kent, 4 N. D. 577, 62 N. W. 631; People v. Hare, 24 N. W. 843 (Mich.); Allen v. State, 10 Ohio St. 288), as supporting the proposition that the witness may be interrogated as to his expectation of leniency, the facts elicited in the case furnished some basis for a just or reasonable expectation of leniency or pardon; such as that the witness had not been informed against, or in-

dicted, or prosecuted or preliminarily examined, or tried, or that he was the recipient of other special favor or treatment supplying him with "inducements and influences for hope"; whereas in the present case the accomplice was promptly informed against, and indicted and had pleaded guilty and was at the time awaiting sentence, and the examination had disclosed no promise, hint or indication of reward, immunity, leniency or pardon given him directly or indirectly. Everybody knows, —and this includes the jurors trying a case,—that an accomplice testifying against his former associates does so either from (1) penitence or (2) personal animosity, (3) the promise of reward, or (4) the hope of leniency; and the jurors hearing the testimony and having before them the facts adduced relative to what occurred both prior to and since his confession are able to judge which is the predominating motive for his evidence and are not helped very much by his being interrogated as to his undisclosed mental processes which are not capable of test, trial or proof. In Kilrow v. Com., supra, the court below refused to allow the defense to show by cross-examination of the accomplice that while he was in Canada, he was told "that if he remained there he would get ten years for the offense; that if he came back they would let him off easier; and that he came back in part because of this inducement." This was error, because it related to a concrete fact reasonably likely to induce a hope or expectation of leniency and not merely an unsupported and undisclosed mental attitude; but the Supreme Court refused to reverse on this ground and said: "While great latitude is allowed in the cross-examination of an accomplice, and the most searching questions are permitted, in order to test his veracity, still this testimony was not important enough to warrant a reversal on the ground of its rejection. Preston's position was defined with sufficient clearness. He had been guilty of the original crime. He was in jail. And his motive in appearing as a witness against the defendant, in order to secure

leniency to himself, was already obvious," (p. 485).   So here, the jury were in possession of all the facts, upon which a hope or expectation of leniency might be based. The refusal of the question as to his mental attitude, disclosed to nobody, even if error,—which we do not decide—, was not important enough to warrant a reversal of the case.   The third and fourth assignments are overruled.

The second, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments may be considered together and must be overruled.   The offer to prove that the witness Goodisky had said to Walter Kachosky about a week before the explosion that they could clean out the scabs and get a lot of money for it, was of no possible relevancy in this case and shed no light on Goodisky's feelings toward the appellants nor on his interest in this prosecution.   The appellants were not "scabs."   That opprobrious term is applied by strikers to men who exercise their right to work when the union orders a strike.   None of the men who were alleged to have had part in the blowing up of the bridge were "scabs"; they were all strikers and union men.   So as to the offer to prove that Goodisky had said that he could get a fellow from Illinois and a few other radicals to blow up the fan house and tipple and clean up Jerome [the nonunion mine].   It was not done, and the remark shed no light on Goodisky's animus towards the defendants nor disclosed any promise or inducement leading him to testify against the defendants.   If Goodisky had been asked concerning these statements and had denied them, he could not have been contradicted, as they were wholly collateral: Hester v. Com., 85 Pa. 139, 158.   So also the alleged conversation with Eustovich and his wife was too remote in that no reference was contained in it to any of these appellants or to the explosion: Hester v. Com., supra, pp. 147, 157.   In Com. v. Simon, 44 Pa. Superior Ct. 538, the case relied upon by appellants in support of these assignments, the question improperly

ruled out by the court, "I will ask you again if you did not state to 'Squire Kirby and Al Simon, on a date one week or ten days prior to your confession at the Hotel Fort Pitt, that you could make a bunch of money out of the banks that were turned down if you could, by your testimony or by other means, in this case and others, have the bank ordinance declared illegal?" was asked of the accomplice concerning the very ordinance in connection with which the defendant was accused of bribery. Had the alleged Eustovich conversation been linked up with the explosion or referred to any of the appellants by name, it would have been error not to permit defendants' counsel to cross-examine Goodisky concerning it and to contradict him if he denied it.

We think the court was sufficiently clear and explicit in its charge as to the caution to be exercised by the jury in convicting the defendants upon the uncorroborated evidence of an accomplice. As pointed out by Prof. Wigmore (2d ed., vol. 4, section 2056, p. 353), this is not a rule of evidence but merely a counsel of caution. "There is no rule of law in this State that forbids a conviction on the uncorroborated testimony of an accomplice: Ettinger v. Com., 98 Pa. 338; Cox v. Com., 125 Pa. 94. The duty to examine such testimony with care, and to accept and act upon it, only when convinced of its truthfulness, was pointed out in the charge": Com. v. De Masi, 234 Pa. 570. In Com. v. Williams, 275 Pa. 58, 65, the court referred to "the time-honored rule that the court should always caution the jury against the testimony of an accomplice." And in Com. v. Lord, 81 Pa. Superior Ct. 279, 280, our Brother PORTER referred to the court having "instructed the jury as to their duty to critically examine the testimony of the accomplice and to accept and act upon it, only when convinced of its truthfulness." In the present case the trial judge said: "This statement by Goodisky characterizes him as an accomplice, or in other words, an associate with the other defendants in crime, a partner and partaker in guilt.

An accomplice is a competent witness and may testify to material facts in issue, but the jury must judge of the credibility and weight of his testimony, and it is the duty of the jury to approach and consider the testimony of an accomplice, in this case Goodisky, a self-confessed criminal, with great caution, as the testimony comes from a source rendered impure, corrupt and beclouded with crime." He cautioned the jury to bear this fact carefully in mind in considering Goodisky's testimony, in connection with his appearance and demeanor on the witness stand, his apparent motive in testifying, his interest or lack of interest in the result and the probability or improbability of his testimony. He warned them, that although they might convict on the testimony of the accomplice alone if they were satisfied of the truth of his testimony beyond a reasonable doubt, it was their duty to carefully examine all the evidence in the case to discover whether the accomplice had been corroborated on some material point or points of his testimony [Ettinger v. Com., supra, p. 344; Kilrow v. Com., supra, p. 488; Cox v. Com., supra, pp. 97, 103], for if not so corroborated it stood alone "as the creature of a self-confessed criminal"; and he impressed upon them at great length their duty to search the testimony cautiously, carefully, detailedly, particularly and specifically to find whether there was evidence corroborating him upon one or more material facts. It was said in Com. v. Craig, 19 Pa. Superior Ct. 81, 94, that it was the duty of the court to admonish the jury of the danger of convicting upon the uncorroborated testimony of an accomplice; "but no set form of expression in which such admonition and advice must be given has been prescribed." See also Com. v. Brown, 58 Pa. Superior Ct. 300, 310. In Com. v. Klein, 42 Pa. Superior Ct. 66, the general charge of the court on this subject (see p. 80), was not as full or cautionary as in the present case, but was not regarded as inadequate. In Com. v. Simon, supra, p. 541, this court said: "Referring to

the charge we think the court sufficiently advised the jury of the rule that it is not considered safe to convict a defendant upon the uncorroborated testimony of accomplices, and that the court also correctly instructed the jury that they had the power to convict on the uncorroborated testimony of an accomplice, if his testimony satisfied them beyond a reasonable doubt of the defendant's guilt." A reference to the paper-books in that case shows that the part of the charge thus approved as adequate was not as emphatic or insistent in its counsel of caution to the jury as the charge in this case.

In Com. v. Haines, 257 Pa. 289, 297, the Supreme Court said: "The court should point out, in a general way, not only the testimony of the accomplice but wherein it is claimed to be contradicted and corroborated and the jury should be told that they must closely scrutinize such testimony and accept it with caution." We think this direction was sufficiently complied with by the court below. It is not required that the trial judge recite all the testimony in detail (Com. v. McCloskey, 273 Pa. 456), nor point out specifically every instance of contradiction and corroboration. It is enough that the attention of the jury be drawn in a general way to the evidence refuting and supporting the accomplice's testimony. This was done in the present case. It is to be noted also that when at the conclusion of the charge the court asked if further instructions were desired on any point, counsel for the defendants made no response. If the charge was deemed inadequate in any respect, the court's attention should have been directed to the subject complained of. That this was not done impels belief that the charge was not at the time considered inadequate: Com. v. McCloskey, supra, p. 461; Com. v. Pava, 268 Pa. 521, 525. The eighteenth, nineteenth and twentieth assignments are overruled.

Nor do we think the other exceptions to the charge are well taken. That portion which relates to the presumption of innocence was almost in the language approved

by the Supreme Court of Indiana in Anderson v. State, 104 Ind. 467, 4 N. E. 63, and by the Supreme Court of Illinois in People v. Scarbak, 245 Ill. 435, 92 N. E. 286, and Spies v. People, 122 Ill. 1, 12 N. E. 865, 904. See also 3 Thompson on Trials, section 5113. The law is not otherwise in this State. That as to the evidence of defendants' character or reputation is supported by McLain v. Com., 99 Pa. 86, 99; Com. v. Harmon, 199 Pa. 521; Com. v. Eckerd, 174 Pa. 137, 148; Com. v. Sayars, 21 Pa. Superior Ct. 75; Com. v. Dingman, 26 Pa. Superior Ct. 615, 623. His comments with reference to the expert testimony was in line with Dawson v. Pittsburgh, 159 Pa. 317, 325; Fuller's Est., 222 Pa. 182, 183; and Brown v. Bush, 45 Pa. 61, 66. The twenty-first, twenty-second and twenty-third assignments are overruled.

We are not satisfied that the court abused its discretion in refusing to permit the defendants' counsel to cross-examine the witness Horgan called to testify on their behalf, [28]. It does not appear that the witness had made any statement to defendants' counsel contrary to his testimony on the stand, as in Com. v. Spardute, 278 Pa. 37, 45, or that he had ever been examined before on behalf of the party calling him, as in Com. v. Reeves, 267 Pa. 361. There was ample opportunity afforded defendants' counsel to question him before calling him to the stand, as to whether the notes of the hearing correctly reported his evidence there. In the absence of a clear abuse of discretion in this respect, the action of the court below will not be reviewed: Com. v. Reeves, supra, p. 363; Com. v. Deitrick, 221 Pa. 7, 16; Com. v. Delfino, 259 Pa. 272, 276.

The order of procedure in a trial is largely within the discretion of the court and even if the evidence of Friedline, Zimmerman and Griffith might have been offered in chief, its admission in rebuttal was not reversible error: Carroll v. Com., 84 Pa. 107, 125; Com. v. Bell, 166 Pa. 405, 413; Gaines v. Com., 50 Pa. 319, 329; Com. v. Gormley, 78 Pa. Superior Ct. 294, 298, [33, 34 and 35]. No

error was committed in receiving in evidence the indictment against Goodisky and his plea of guilty thereto: Com. v. Biddle (No. 1), 200 Pa. 640, 646 [36]. Goodisky had testified that he had not attended to the securing of his bail bond nor paid the premium, and did not know who was his surety on such bond or who had obtained it for him. It did not affect his credibility merely to prove that some one else had secured the bond for him and paid the premium, and it was not material to offer it for the purpose of showing that he was an accomplice, as that was admitted [5, 6, 7, 8 and 9].

We do not deem it necessary to refer to the other assignments in detail. We have considered them all, but find in them no reversible error. They are all overruled. Nor do we feel that we should grant appellants' unsupported motion, presented at the argument, and remit the record to the lower court with authority to reinstate the rule for a new trial, on the ground of after-discovered evidence. From a careful reading of the evidence in the case, and especially the cross-examination of Goodisky, [Record, 69a] we are inclined to the belief that the defendants either had some knowledge of the alleged meeting in Johnstown or could have secured it by due diligence in time for the trial.

The judgments are affirmed and it is ordered that the defendants severally appear in the court below at such time as they may be there called and that they be by that court committed until they have complied with their respective sentences or any part thereof which had not been performed at the time the several orders of supersedeas were entered in these appeals.